1  Melanie M. Poturica, Bar No. 91279
   mpoturica@lcwlegal.com
2  Jennifer M. Rosner, Bar No. 227676
   jrosner@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  6033 W. Century Boulevard, Suite 500
   Los Angeles, CA 90045
5  Telephone: (310) 981-2000
   Facsimile: (310) 337-0837
6
7  Attorneys for Defendants
   Gregory Savelli, City of Hermosa Beach, Hermosa
8  Beach Police Department, Stephen Burrell, Thomas
   Eckert, Thomas Bohlin
9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12  DONOVAN SELLAN; SCOTT              Case No. CV09-06074 DDP (Ex)
    KANSAKU; and DAVID BOHACIK,
13                                     **[Assigned For All Purposes To The
                  Plaintiff,          Honorable Percy Anderson]**
14
    v.                                 **DEFENDANTS' REQUEST FOR
15                                     JUDICIAL NOTICE IN SUPPORT
    GREGORY SAVELLI, Chief of          OF REPLY TO PLAINTIFFS'
16  Police; CITY OF HERMOSA BEACH,     OPPOSITION TO MOTION TO
    municipal entity; HERMOSA BEACH    DISMISS FIRST AMENDED
17  POLICE DEPARTMENT, a               COMPLAINT**
    government agency; STEPHEN
18  BURRELL, City Manager/Personnel    Date:      September 28, 2009
    Officer, for the City of Hermosa Beach;   Time:      10:00 a.m.
19  Police Captain THOMAS ECKERT;      Dept.:     3
    Police Lieutenant THOMAS BOHLIN;
20  and DOES 1 through 20, inclusive,
21                Defendants.
22                                     **[*Exempt from filing fees pursuant to
                                       Gov. Code, § 6103.]**
23
24     **TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:**

25        **PLEASE TAKE NOTICE** that on September 28, 2009 at 10:00 a.m., or as

26  soon thereafter as the matter may be heard, Defendants GREGORY SAVELLI,

27  CITY OF HERMOSA BEACH, HERMOSA BEACH POLICE DEPARTMENT,

28

*(left margin)* LIEBERT CASSIDY WHITMORE / A Professional Law Corporation / 6033 W. Century Boulevard, Suite 500 / Los Angeles, CA 90045

1   STEPHEN BURRELL, THOMAS ECKERT and THOMAS BOHLIN (collectively

2   "Defendants"), will request the Court to take judicial notice of the following

3   document in connection with Defendants' Reply to Plaintiffs' Opposition to Motion

4   to Dismiss Plaintiffs' First Amended Complaint:

5        1.        Memorandum of Understanding Between the City of Hermosa Beach

6                  and the Police Officers and Police Sergeants Bargaining Group, July

7                  1, 2009 – June 30, 2010, a true and correct copy of which is attached

8                  hereto as Exhibit 3.[1]

9

10  Dated: September 21, 2009              Liebert Cassidy Whitmore

11

12                                         By:

13                                         _____
                                           Melanie M. Poturica
14                                         Jennifer M. Rosner
                                           Attorneys for Defendants
15                                         GREGORY SAVELLI, CITY OF
                                           HERMOSA BEACH, HERMOSA
16                                         BEACH POLICE DEPARTMENT,
                                           STEPHEN BURRELL, THOMAS
17                                         ECKERT AND THOMAS BOHLIN

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

---

[1] Exhibits 1 and 2 have been attached to Defendants' Request for Judicial Notice in Support of Motion to Dismiss Plaintiffs' First Amended Complaint.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In support of Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss Plaintiffs' First Amended Complaint, Defendants request that the Court take judicial notice of the document of the Memorandum of Understanding ("MOU") Between the City of Hermosa Beach and the Police Officers and Police Sergeants Bargaining Group, July 1, 2009 – June 30, 2010, a true and correct copy of which is attached hereto as Exhibit 3.

## II.   ARGUMENT

Federal Rule of Evidence 201(b) states that a district court can take judicial notice of facts which are not subject to reasonable dispute and are either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.

It is well settled that, under Federal Rule of Evidence 201, a district court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted); *U.S. v. Southern California Edison Co.,* 300 F.Supp.2d 964 (E.D. Cal. 2004).

Here, the document Defendants request the Court to take judicial notice of (the MOU between the City and the Police Officers and Police Sergeants Bargaining Group) are public records of the City.  The Court should take judicial notice of these documents because they are all clearly capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

///

///

1

### III.    <u>CONCLUSION</u>

2          For the reasons set forth above, the Defendants requests that the Court take

3    judicial notice of Exhibit 3, attached hereto.

4

5    Dated:    September 21, 2009              Liebert Cassidy Whitmore

6

7                                             By:

8                                                 Melanie M. Poturica
                                                  Jennifer M. Rosner
9                                                 Attorneys for Defendants
                                                  Greg Savelli, City of Hermosa Beach,
10                                                Hermosa Beach Police Department,
                                                  Stephen Burrell, Thomas Eckert and
11                                                Thomas Bohlin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# EXHIBIT A

# MEMORANDUM OF UNDERSTANDING

### BETWEEN

### CITY OF HERMOSA BEACH

### AND

### POLICE OFFICERS AND POLICE SERGEANTS
### BARGAINING GROUP

### JULY 1, 2009 - JUNE 30, 2010

# TABLE OF CONTENTS

**SUBJECT**                                                        **PAGE**

| | |
|---|---|
| 7K Exemption | 8 |
| Ammunition Replacement | 17 |
| Assignment Pay | 17 |
| Association Directors Time | 22 |
| Base Salary | 8 |
| Bereavement Leave | 16 |
| Call Backs | 11 |
| City Motorcycle Use | 10 |
| City Vehicle Use | 10 |
| Clothes Changing | 11 |
| Compensation | 7 |
| Compensatory Time | 9 |
| Court Time | 11 |
| Deferred Compensation | 12 |
| Disciplinary Actions | 21 |
| Duration of Contract | 23 |
| Early Relief Policy | 10 |
| Educational Incentive Compensation & Maintenance of Benefits | 16 |
| Extra Job Sign-Ups | 20 |
| FLSA Overtime | 8 |
| Full Understanding, Modification, Waiver | 6 |
| Grievance Procedure | 6 |
| Holidays | 15 |
| Insurance Coverage | 12 |
| Job Action | 3 |
| Layoff | 22 |
| Leave Of Absence | 14 |
| Longevity Pay | 16 |
| Management Rights | 4 |
| Monthly Meetings | 3 |
| No Smoking | 22 |
| Non-Discrimination | 3 |
| Overtime Authorization | 9 |
| Overtime Practices | 8 |

Paid Leave Exclusions ................................................................. 8

Parties to the Memorandum ......................................................... 2

Performance Review .................................................................. 21

Physical Fitness Time ................................................................. 18

Provisions of Law – Inseparability ............................................... 5

Recognition ............................................................................... 2

Retirement ............................................................................... 13

Scope & Implementation of the MOU ........................................... 2

Shift Coverage ........................................................................ 20

Shift Trades .............................................................................. 9

Sick Leave .............................................................................. 15

Standby Court Time .................................................................. 11

Training Time .......................................................................... 10

Uniform Allowance ................................................................... 16

Vacation ................................................................................. 14

Watch commander Selection ...................................................... 20

Work Schedule .......................................................................... 6

Yearly Shift Changes ................................................................ 19

**MEMORANDUM OF UNDERSTANDING**
**FOR THE**
**HERMOSA BEACH**
**POLICE OFFICERS AND POLICE SERGEANTS BARGAINING GROUP**

## ARTICLE 1 – PARTIES TO THE MEMORANDUM

This Memorandum of Understanding, hereinafter referred to as the "MOU" or the "Agreement," has been entered into, pursuant to the laws of the State of California and the City of Hermosa Beach, California, by and between the CITY OF HERMOSA BEACH, hereinafter referred to as the "City" or as "Management," and the HERMOSA BEACH POLICE OFFICERS ASSOCIATION, hereinafter referred to as the "Association."

## ARTICLE 2 – RECOGNITION

Pursuant to the provisions of the Meyers-Milias-Brown Act, (Government Code 3500, et seq.), the City agrees to, and does, recognize the Hermosa Beach Police Officers Association as the exclusive representative of the full-time positions in the classifications of POLICE OFFICER AND POLICE SERGEANT of the City of Hermosa Beach.

## ARTICLE 3 – SCOPE & IMPLEMENTATION OF THE MEMORANDUM OF UNDERSTANDING

A.    This Memorandum of Understanding (MOU) constitutes the joint recommendation of Management and the Association.  It shall not be binding in whole or in part upon the parties unless and until the following conditions have been complied with:

   1.    The Association shall notify the City Council in writing that it has formally approved the Memorandum of Understanding in its entirety.

   2.    The City Council shall approve this Memorandum of Understanding.

   3.    This MOU has been reached following good-faith negotiations, by the authorized Management representative of the City Council and the authorized representative for the Hermosa Beach Police Officers Association.

## ARTICLE 4 – <u>MONTHLY MEETINGS</u>

A.    In the interest of fostering and continuing a spirit and atmosphere of harmonious employer-employee relationships, it is agreed that the Association Board of Directors shall meet once a month at a designated time and place with administrative officers of the Department.  There shall be no less than two (2) Board members present for each such meeting.

B.    It is further agreed that the Association and the City Manager shall meet when requested by the Association to best effect implementation of this document.

## ARTICLE 5 – <u>JOB ACTION</u>

A.    The Association and its members agree that during the term of this MOU there shall be no strike.

B.    In the event of an unauthorized strike, the City agrees that there will be no liability on the part of the Association provided the Association promptly and publicly disavows such unauthorized action; orders the employees to return to work and attempts to bring about a prompt resumption of normal operations; and provided further, that the Association notifies the City in writing, within 48 hours after the commencement of such strike, what measures it has taken to comply with the provisions of this strike.

C.    In the event such strike by the Association has not affected resumption of normal work practices, the City shall have the right to take appropriate disciplinary action.

## ARTICLE 6 – <u>NON-DISCRIMINATION</u>

Both parties to this Agreement agree not to discriminate against any employee or applicant because of age, gender, race, national origin, religion, color, ancestry, marital status, sexual orientation, physical or mental disability, medical condition, and/or Association membership or activity.  Additionally, the City expects and requires all employees to treat one another with dignity and respect.  Harassment of fellow employees is a violation of law.  No employment decision may be made based upon an employee's submission to or rejection of such conduct.  It is the responsibility of any employee, who believes that they are the victim of such harassment, whether sexual, racial, ethnic or religious, to report the conduct to their Division Commander, Chief of Police, Personnel Director or the City Manager in a timely manner.

## ARTICLE 7 – <u>MANAGEMENT RIGHTS</u>

1.   Manage the City.

2.   Schedule working hours.

3.   Establish, modify or change work schedules or standards.

4.   Institute changes in procedures.

5.   Direct the work force, including the right to hire, promote, demote, transfer, suspend, discipline or discharge any employee.

6.   Determine the location of any new facilities, buildings, departments, divisions, or subdivisions thereof, and the relocation, sale, leasing or closing of facilities, departments, divisions, or subdivisions thereof.

7.   Determine services to be rendered.

8.   Determine the layout of buildings and equipment and materials to be used herein.

9.   Determine processes, techniques, methods and means of performing work.

10.  Determine the size, character and use of inventories.

11.  Determine the financial policy including accounting procedures.

12.  Determine the administrative organization of the system.

13.  Determine selection, promotion, or transfer of employees.

14.  Determine the size and characteristics of the work force.

15.  Determine the allocation and assignment of work to employees.

16.  Determine policy affecting the selection of new employees.

17.  Determine the establishment of quality and quantity standards and the judgment of quality and quantity of work required.

18.  Determine administration of discipline.

19.  Determine control and use of City property, materials and equipment.

20.  Schedule work periods and determine the number and duration of work periods.

21.  Establish, modify, eliminate or enforce rules and regulations.

4

Police Officers & Sergeants

22.   Place work with outside firms.

23.   Determine the kinds and numbers of personnel necessary.

24.   Determine the methods and means by which such operations are to be conducted.

25.   Require employees, where necessary, to take in-service training courses during working hours.

26.   Determine duties to be included in any job classifications.

27.   Determine the necessity of overtime and the amount of overtime required.

28.   Take any necessary action to carry out the mission of the City in cases of an emergency.

The exercise of the foregoing powers, rights authority, duties and responsibilities by the City, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and the discretion in connection therewith, shall be limited only by the specific and express terms of this Memorandum of Understanding, City Personnel Ordinance and Personnel Rules and Regulations, the Public Safety Officers Procedural Bill of Rights, and other statutory law.

Except in emergencies, or where the City is required to make changes in its operations because of the requirements of law, whenever the exercise of management's rights shall impact on employees of the bargaining unit, the City agrees to meet and confer with representatives of the Association, upon request by the Association, regarding the impact of the exercise of such rights unless the matter of the exercise of such rights is provided for in this Memorandum of Understanding.

## ARTICLE 8 – <u>PROVISIONS OF LAW – INSEPARABILITY</u>

It is mutually understood that this MOU is, and shall be, subject to all current and future applicable state, federal and local laws.  If any article, part, provision or segment of this MOU is, or shall be, in conflict with or inconsistent with such applicable provisions of federal, state or local law, or is otherwise held to be invalid, or unenforceable by any court of competent jurisdiction by final decree, such article, part or provision thereof shall be superseded by such applicable law and the remainder of this MOU shall in no way be affected thereby.

## ARTICLE 9 – <u>FULL UNDERSTANDING, MODIFICATION, WAIVER</u>

A.   It is intended that this Agreement sets forth the full and entire understanding of the parties regarding the matters set forth herein, and any other prior or existing understanding or agreements by the parties whether formal or informal, regarding any such matters are hereby superseded or terminated in their entirety.

B.   Except as specifically provided herein, it is agreed and understood that each party hereto voluntarily and unqualifiedly waives its right, and agrees that the other shall not be required to negotiate with respect to any subject or matter covered herein during the term of this agreement.

C.   Any agreement, alteration, understanding, variation, waiver, or modification of any of the terms or provisions contained herein shall not be binding upon the parties hereto unless made and executed in writing by all parties hereto, and if required, approved and implemented by the City Council.

D.   The waiver of any breach, term or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of all its terms and provisions.

## ARTICLE 10 – <u>GRIEVANCE PROCEDURE</u>

The Grievance Procedure is attached as Exhibit A and incorporated herein by reference.

## ARTICLE 11 – <u>WORK SCHEDULE</u>

A.   The City agrees to the utilization of the 3/36 plan for all officers and sergeants assigned to patrol, motors and K-9.  There will be no payback days during the months of approximately  December through May.  There will be payback days during the months of approximately June through November.

B.   The Sergeants and Officers assigned to investigations and administrative positions will work a 4/36 schedule (four nine-hour days/week) during the months of December through May and a 4/40 schedule (four ten-hour days/week) during the months of June through November.

C.   The exact change over dates from payback to no payback for patrol, motors and K-9 will be determined by the Patrol Commander based upon the current twenty-one (21) day cycle.

D.   In the event of an emergency situation, the City may cancel, alter or amend the work schedule as necessary, immediately.

E.   It is mutually agreed that for the reduction in hours expressed in "A" and "B" above, the City, for market salary comparison purposes only, shall increase base salary 5% as a credit.

## ARTICLE 12 – <u>COMPENSATION - METHODS OF COMPENSATION</u>

A.   Methods of Compensation:

    1.   Compensation shall be determined on an hourly basis.

    2.   Payments due shall be paid on a bimonthly basis unless otherwise mutually agreed.   By mutual consent early payments and other modifications can be made.

    3.   Base hourly salary shall be considered the rate of pay for a particular classification without consideration of any other form of compensation.

B.   Salary Advancements within Base Pay Range:

    1.   Step Advancement:

        a. All salary advances shall be based on merit and fitness.  All increases shall be recommended by the Department Head and approved by the Personnel Director/City Manager.  Merit increases shall be effective at the beginning of the next pay period (1st or 16th of the month).

        b. Upon the successful and satisfactory completion of twelve (12) months service (exclusive of police recruit status), employees shall be advanced one step within their range and yearly thereafter until the maximum within the range achieved.

    2.   Promotion

        a. An employee who is promoted to a position in a class with a higher salary rate shall be entitled to the lowest step in the higher range, which exceeds the present rate of pay with the intent of increasing the base salary rate by at least 5%.

C.   Compensatory Time:

    1.   Employees may accrue up to 175 hours of compensatory time and may cash out all or part of such accrued time at any time, subject to the budgetary constraints of the department.

7

Police Officers & Sergeants

## ARTICLE 13 – <u>BASE SALARY</u>

A.     Base salary ranges shall be as follows:

| POLICE OFFICER | 4867 | 5109 | 5366 | 5633 |
| POLICE SERGEANT | 5852 | 6145 | 6452 | 6776 |

## ARTICLE 14 – <u>OVERTIME PRACTICES</u>

A.     <u>7K Exemption</u>

The City of Hermosa Beach has exercised its ability to take a statutory 7K exemption for sworn police personnel.  The work period for such employees shall be 28 days in length commencing on Sunday, May 22, 1988, at 12:01 A.M.

B.     <u>F.L.S.A. Overtime</u>

All employees required to perform in excess of the standard work shift, or at times other than their regularly scheduled work shift, shall receive compensation at the rate of time and one-half their regular rate of pay.  The regular rate of pay shall include the following components in addition to base salary.

1. Educational incentive
2. Assignment Pay
3. Longevity Pay

C.     <u>Paid Leave Exclusions</u>

In determining an employee's eligibility for overtime compensation in a workday, paid leaves of absence and unpaid leaves of absence shall be excluded from the total hours worked.  For this purpose, paid leaves of absences include, but are not limited to the following:

1. Vacation
2. Holiday Leave
3. Sick Leave
4. Compensatory Leave
5. 4850 Time
6. Jury Duty
7. Military Leave

Police Officers & Sergeants

D.     <u>Compensatory Time</u>

    1.     In lieu of receiving cash payment for overtime hours, an employee may elect the option of taking compensatory time off.

    2.     Compensatory time shall be earned at the time and one-half rate for each hour worked. An employee may accrue up to a maximum of 175 hours (after conversion at time and one-half) compensatory time.

E.     <u>Overtime Authorization</u>

All overtime requests must have prior written authorization of a supervisor prior to the commencement of such overtime work. Where prior written authorization is not feasible, explicit verbal authorization must be obtained. Where verbal authorization is obtained, written authorization must be obtained as soon thereafter as practicable. Dispatched calls beyond the end of duty time are considered as authorized. An employee's failure to obtain prior written approval, or explicit verbal authorization followed by written authorization, will result in the denial of the overtime request.

F.     <u>Shift Trades</u>

    1.     The practice of shift trading shall be voluntary on behalf of each employee involved in the trade. The trade must be due to the employee's desire or need to attend to a personal matter and not due to the department's operations. The employee providing the trade shall not have his/her compensable hours increased as a result of the trade; nor shall the employee receiving the trade have their compensable hours decreased as a result of the trade. Any premium pay or other extra compensation shall continue to accrue only to the person originally entitled to the premium pay or extra compensation. Any hours worked beyond the normal workday will be credited to the individual actually doing work. "Paybacks" of shift trade are the obligation of the two employees involved in the trade. Paybacks are to be completed within one (1) calendar year of the date of the initial shift trade. Any dispute as to the paybacks is to be resolved by the involved employees, and under no circumstances will the department be obligated for any further compensation whatsoever to any of the involved employees. The department is not responsible in any manner for hours owed to employees by other employees that leave the employment of the City or are assigned other duties. A record of all initial shift trades and "paybacks" shall be maintained by the involved employees on forms provided by the department ("shift trade log.")

    2.     If one individual fails to appear for the other (regardless of the reason), the person who was scheduled as a result of the shift trade will be listed as absent without leave and may be subject to disciplinary action.

Police Officers & Sergeants

G.   Early Relief Policy

The practice of early shift release shall be voluntary on behalf of each employee involved in the relief.  The employee providing the early relief shall not have his/her compensable hours increased as a result of the early relief, nor shall the employee relieved early have their compensable hours decreased as a result of the early relief.  "Paybacks" of early relief hours are the sole obligation of the two employees involved in the early relief.  Any dispute is to be resolved by the involved employees, and under no circumstances will the department be obligated for any further compensation whatsoever to any of the involved employees.  The department is not responsible in any manner for hours owed to employees by other employees that leave the employment of the City or are assigned other duties.

H.   Training Time

Attendance at training school/facilities (including the academy), which improves the performance of regular tasks and/ or prepares for job advancement are not compensable for hours in excess of the employee's normal work shift.  Any time spent in excess of the normal work shift will not be counted as working time and is not compensable in any manner whatsoever.  Time spent in studying and other personal pursuits is not compensable hours of work.

I.   City Vehicle Use

Except as otherwise herein provided, employees who are provided with a City vehicle to travel to and from work shall not be compensated in any manner whatsoever for travel time to and from work.  This provision also applies in those situations where the radio must be left on and monitored.

J.   City Motorcycle Use

Employees assigned to motor duty may, with the approval of the Police Chief, use the city assigned motorcycle to travel to and from work.  Such travel time will not be compensated in any manner whatsoever (even when the employee is required to leave the radio on and monitor the radio.) Any work the employee performs on the motorcycle while away from the police facility will not be considered hours worked and will not be compensated in any manner whatsoever.

K.      Clothes Changing

Employees are not authorized to wear their uniforms or any part thereof that is distinguishable as such unless on duty. Employees are provided with a locker for their personal convenience. Any employee may or may not utilize the locker for storage and changing purposes at their own discretion. Nothing herein prevents an employee from wearing their uniform to and/or from their residence to work as long as the badge and insignia are covered in a non-police issued garment such as a windbreaker. Employees choosing to wear their uniforms covered to and/or from work should not wear their "Sam Browne" belt. Time spent in changing clothes before or after shift, is not considered hours worked and is not compensable in any manner whatsoever.

L.      Call Backs

Call Back duty occurs when an employee is ordered to return to duty on a non-regularly scheduled work shift. Call back does not occur when an employee is held over from their prior shift or is working prior to their regularly scheduled shift. An employee called back to duty shall be credited with a minimum of two hours work commencing when the employee reports to work. Any hours worked in excess of two hours shall be credited on an hour-for-hour basis for actual time worked. This provision is to be distinguished from Court pay, which is to be used when an employee is called back to court.

M.      Court Time

1.      When an officer is physically called to court, they shall be credited on an hour-for-hour basis for the time actually spent in court. They shall receive a minimum two (2) hours paid at time and a half for a morning appearance with a minimum two (2) hours paid at time and a half for an afternoon appearance. Travel time shall be included for any subpoenaed appearance other than to the Torrance Courthouse.

2.      An officer who is subpoenaed to testify telephonically shall receive a minimum three (3) hours for a morning time and three (3) hours for an afternoon time.

N.      Standby Court Time

An employee who while off duty is on court standby status may leave a telephone number where they may be reached while on court standby. Such time is not considered hours worked under the Fair Labor Standards Act. The employee will receive straight time pay, up to a maximum of 8.5 hours per day, for standby during the pendency of the case.

## ARTICLE 15 – <u>INSURANCE COVERAGE</u>

A.   <u>LIFE</u>

City shall provide a life insurance policy for each employee, payable in the amount of $60,000 upon such employee's death.

B.   <u>MENTAL HEALTH</u>

City shall make such a plan available to City employees; the full cost to be paid by the employee.

C.   <u>VISION</u>

City shall make such a plan available to City employees; the full cost to be paid by the employee.

D.   <u>MEDICAL</u>

1.   City shall provide for Association members a medical insurance plan to include a choice of an indemnity plan with $300.00 deductible or an HMO plan; both plans to include maternity care and prescription benefits. The current medical plan or its equivalent, to remain in force during the term of this MOU. City shall meet and consult should there be a change in providers or plan structure. The City is exploring the ability to offer health insurance through P.E.R.S.

2.   The HMO plan shall have no greater than a $10.00 office visit and prescription co-pay during the term of this Agreement.

3.   City to pay employee costs and current dependent rate with any future increased dependent costs to be borne 80% City and 20% employee.

E.   <u>DENTAL</u>

1.   City shall provide for Association members a dental insurance plan to include a choice of an indemnity plan or a pre-paid plan.

2.   City to pay employee cost and current dependent rate with any future increased dependent costs to be borne 80% City and 20% employee.

## ARTICLE 16 – <u>DEFERRED COMPENSATION</u>

City agrees to make available to all employees in the Unit the citywide Deferred Compensation Plan. All participants being then eligible to vote on decisions of the Deferred Compensation Committee. Members of the Association may participate in any of the Deferred Compensation plans provided for City employees.

## ARTICLE 17 – <u>RETIREMENT</u>

A.  The City shall maintain the 3% @ 50/PERS contract with "ONE YEAR FINAL COMPENSATION" in effect at the time of this contract.

B.  The City will pay the FULL employee's 9% contribution to the P.E.R.S. retirement system credited to the employee's portion.

C.  The City shall report to P.E.R.S. the value of the 9% employer paid member contribution (EPMC) pursuant to the authority of Government Code section 20023(c)(4).

D.  Retiree medical insurance stipends provided to employees who retired prior to July 1, 2003 shall remain at existing amounts.  Employees covered by this agreement who retire from the City of Hermosa Beach after July 1, 2003 will be eligible for the following medical insurance benefits:

1.  The City will pay an amount up to the employee only HMO premium available through the City's medical insurance provider for employees who complete a minimum of twenty (20) years total full-time sworn police service with the City, regardless of the employee's age at the time of separation from city service.

2.  For retirement at age fifty-five (55) with a minimum of fifteen (15) years total full-time service with the City, the City will pay an amount up to the employee only HMO rate available through the City's medical insurance provider.

3.  Said benefit provided under Sections 1 and 2 above, shall commence with the first month following the employee's approved retirement date by Cal PERS.

4.  In order to be eligible for medical supplement payments, an employee must either remain on a medical insurance plan offered by the City or provide proof of coverage on a self-procured medical insurance plan.

5.  Any payments made by the City shall normally be made directly to a medical insurance provider.  However, other payment arrangements may be considered.

6.  Any employee receiving a benefit under this article agrees to apply for, and enroll in, any Federal and/or State medical insurance plan (e.g. Medicare, Medicaid, etc.) for which they may become eligible unless such Federal and/or State medical insurance plan or equivalent no longer exists.

7.  Upon enrollment in Medicare, the City agrees to pay the premium for purchasing coverage equivalent to the benefits provided under the existing Medicare "Part B" program.

8.  For employees not eligible for Medicare benefits, who were employed prior to the City's participation in the Medicare program, the City will continue retiree

medical insurance benefits the employee is eligible for under section 1 or 2 above.

E.    The City shall amend its contract with the Public Employees' Retirement System to provide the retirement formula known as 3% @ 50 effective January 1, 2001.

## ARTICLE 18 – LEAVE OF ABSENCE

Management agrees to allow all employees covered by this MOU to take a leave of absence without pay, not to exceed 60 days, in conjunction with, or in addition to, their regular vacation time.   This leave will only be allowed every other year.   Timing and duration of leave subject to approval of and subject to the needs of the department. Any request for such leave must be delivered to the Chief a minimum of 30 days in advance.   This provision shall not reduce any leave entitlement an employee may have under the Military and Veterans Code.

## ARTICLE 19 – VACATION

A.    Effective October 1, 1994 the Vacation accrual rates for all employees covered by this agreement shall be as follows:

1.    Upon hire, at the rate of 96 hours/year.
2.    Commencing with the 7th year, at the rate of 112 hours/year.
3.    Commencing with the 8th year, at the rate of 136 hours/year.
4.    Commencing with the 15th year, at the rate of 160 hours/year.
5.    Commencing with the 16th year, at the rate of 168 hours/year.
6.    Commencing with the 17th year, at the rate of 176 hours/year.

B.    An employee covered by this Agreement may accrue vacation time to a maximum of 270 hours.   Cash out of any earned but unused vacation accrual in excess of 270 hours (as of January 31st each year) shall be automatically cashed out as part of the February 20th payroll.   Those employees who as of March 1, 1995 have an accrual balance in excess of 270 hours shall have that amount as their accrual maximum.   Lower accruals will become their new maximum until such time as their bank reaches 270 hours.

C.    During the term of this Agreement Police Management shall formulate a paid time-off policy.

Police Officers & Sergeants

## ARTICLE 20 – <u>HOLIDAYS</u>

A.   All employees shall receive 9.33 hours per month of "Holiday Comp".

B.   All personnel are scheduled without regard to holidays and receive holiday compensatory time in lieu of paid holidays off.

C.   An employee covered by this Agreement may accrue Holiday Comp time to a maximum of 112 hours.  Cash out of any earned but unused Holiday Comp accrual in excess of 112 hours (as of January 31st of each year) shall be automatically cashed out as part of the February 20th payroll.

D.   All personnel have the option of receiving pay by cashing out holiday comp time each pay period in which it is accrued.  Subject to regulations established by CalPERS, this compensation shall be reported to CalPERS.  Current CalPERS regulations specifically state that should an employee utilize this cash out provision ONLY during their final compensation period, said additional compensation shall be excluded from reportable compensation.

## ARTICLE 21 – <u>SICK LEAVE</u>

A.   Employees shall accrue 8 hours of sick leave per month.

B.   A once a year cash-in can be up to 100% of the unused sick leave as long as at least 176 accrued hours remains on hand.

C.   An employee covered by this Agreement may accrue sick leave to a maximum of 600 hours.  Cash out of any earned but unused sick leave accrual in excess of 600 hours (as of January 31 each year) shall be automatically cashed out as part of the February 20th payroll.

D.   In the case of serious illness of a member of the immediate family, the employee may utilize sick leave.  Immediate family for the purpose of this section shall be defined as: father; mother; father-in-law; mother-in-law; grandparents; brother; sister; spouse; or legal dependent.  Employees may predesignate and substitute other members for those members defined as "immediate family." The intent of this provision is not to expand the number of persons included in the definition of "immediate family" or to increase paid leave opportunities, but, rather to recognize variation in family structure (e.g. stepmother for mother).

E.   Effective March 1, 1995 upon termination from City employment, sick leave will be paid at the current hourly pay rate, on the following conditions:

1.   25% pay 5 through 9 years of total full time City service.

2.   50% pay 10 through 19 years of total full time City service.

3.   100% pay 20 + years of total full time City service.

Police Officers & Sergeants

## ARTICLE 22 – <u>BEREAVEMENT LEAVE</u>

Each employee shall receive a maximum of three shifts per calendar year to be utilized for bereavement leave because of a death in their immediate family.  Immediate family shall be defined as in Article 21 C - SICK LEAVE.  Said time will not be cumulative from one twelve month period to another nor will pay in lieu of unused leave for bereavement be provided.  The Chief may grant one (1) additional shift in the event of a death that requires extended travel.  For the purposes of bereavement leave, parents in-law, step children and parents, and persons living within the same household are to be considered in the definition of "immediate family".

## ARTICLE 23 – <u>LONGEVITY PAY</u>

Effective July 1, 2004, employees shall receive additional compensation of 5% above base salary for each level of full-time sworn police service with the City of Hermosa Beach according to the following schedule:

Upon commencement of the fifth (5th) year
Upon commencement of the tenth (10th) year
Upon commencement of the fifteenth (15th) year
Upon commencement of the twentieth (20th) year.

## ARTICLE 24 – <u>EDUCATIONAL INCENTIVE COMPENSATION & MAINTENANCE OF BENEFITS</u>

A.   In recognition of formal professional training, obtained from either an accredited educational institution or through P.O.S.T. sanctioned training, or a combination of both, City agrees to a concept of pay as an adjunct to base monthly salary for achieving various levels of professional proficiency certification as follows:

Effective July 1, 2004, employees who obtain an A.A. or A.S. degree or an Intermediate P.O.S.T. Certificate shall receive additional compensation of 5% above base salary.

Effective July 1, 2004, employees who obtain a B.A. or B.S. degree or Advanced P.O.S.T. Certificate shall receive additional compensation of 10% above base salary.

B.   Employees receiving such compensation are obligated to maintain the educational level required for P.O.S.T. Certification, at the City's expense and at the direction of the Police Department.

## ARTICLE 25 – <u>UNIFORM ALLOWANCE</u>

A.   Said allowance for Officers and Sergeants to be $772/year, payable through the regular payroll schedule.

B.    An absence due to sick leave, or leave of absence without pay, exceeding sixty days (60), days shall result in a pro-rata reduction in uniform allowance for the time of the absence.

## ARTICLE 26 – <u>AMMUNITION REPLACEMENT</u>

A.    In addition to the quarterly qualification ammunition, each officer will be allowed to utilize fifty (50) rounds of ammunition for their primary duty weapon, at City expense, each month at the firing range used by the Department.  The City will also pay for the expense of using the range.  The ammunition will be used to practice on an approved course of fire so that officers will become more proficient with their service weapons.

B.    The City will not compensate officers for the time spent to utilize this ammunition. Officers must use the allotted ammunition each month, it does not accumulate.

## ARTICLE 27 – <u>ASSIGNMENT PAY</u>

A.    The City shall pay 9% of base salary per month to each officer assigned to a detective position, including background/training detective, administrative position or specialty assignment That compensation shall be for the additional time detectives are "on-call." This sum shall be included in total compensation calculations for retirement purposes.

B.    The City agrees to pay the personnel assigned as Community Lead Officer 7% of base salary per month as special duty pay.  That sum shall be included in total compensation calculations for retirement purposes.

C.    The City agrees to pay to each officer assigned to field training or acting watch commander duties the sum of three dollars and thirty seven cents ($3.37) per hour as special duty pay.  That sum shall be included in total compensation calculations for retirement purposes.

D.    The City agrees to pay each officer assigned to Motorcycle Duty 7% of base salary per month.  This sum shall be payable when on duty, during hazardous duty disability leaves, and during absences from work of less than one month. This sum shall be included in total compensation calculations for retirement purposes.

E.    The Special Assignments in this Article are of a temporary duration.   The Community Lead Officer assignment shall be filled as part of the shift rotation. Assignment to a Detective, Administrative, Backgrounds and Training, or Motor Officer positions shall be for a period of four (4) years without extension.  The right to assign and reassign shall be vested solely with the Chief of Police

F.    The parties understand and agree that all assignments to extra-pay positions are temporary assignments, and that officers will be rotated into and out of these assignments as part of the department's job enrichment and career development program.

G.    In conformity with this understanding, each officer who accepts an assignment shall sign a statement indicating that they understand the temporary nature of the assignment. Nothing herein shall abrogate an employee's appeal rights as set forth in Government Code Section 3304.

H.    The City agrees to pay each officer assigned to the Police Service Dog Program as a Police Service Dog handler the sum of two hundred and twenty dollars ($220.00) per month. This amount shall be considered as full compensation for the additional incidental hours required for the animals veterinary care; routine care for the K-9's physical health, welfare and grooming; daily and routine maintenance to the K-9 patrol vehicle and field equipment. This sum shall be included in total compensation calculations for retirement purposes.

I.    Time spent "on-call" shall not be considered hours worked for FLSA purposes and is not compensated in any manner.

J.    Employees assigned full time to the Department's Police Service Dog Program are subject to schedule changes contingent on meeting Police Dog Program priorities and Department needs.

## ARTICLE 28 – <u>PHYSICAL FITNESS TIME</u>

The City and the Association agree to a program providing for an on-duty workout period for Officers and Sergeants under the following conditions and as approved by the Chief of Police:

A.    The workout shall be of thirty (30) minutes duration, beginning when the employee enters the workout facility. The workout shall take place within the City or within ¼ mile of the City boundary.

B.    The work out shall be conducted during "Code-7" lunch period.

C.    There is not interruption of service to the City.

D.    Release time to workout is at the discretion of the City.

E.    Individuals may be barred from this program at City discretion if there is evidence of abuse.

## ARTICLE 29 – <u>YEARLY SHIFT CHANGES</u>

A.      There will be four (4) quarterly shift changes per twelve (12) month period. These quarterly shift changes shall begin on the first Sunday of the first month of each quarter.  The quarters shall run as follows:

      1.      June, July, August
      2.      September, October, November
      3.      December, January, February
      4.      March, April, May

Although there will be four (4) shift changes in a twelve month period, employees shall bid on a semi-annual basis for two consecutive shifts at a time.

B.      For shift bidding purposes, the schedule will be posted on October 1, for the quarters December-February and March-May and on April 1 for the quarters June-August and September-November.   The sign-up schedule will remain posted for thirty (30) days from the date of posting for employee shift bidding. Management will then have thirty (30) days to finalize the schedule in advance of the schedule change.

C.      Employees are not mandated to rotate between day and night shifts.  Bidding for shifts and days off shall be made on a seniority basis.  Management will continue to assign new hire employees to shifts only, without regard to days off, through completion of their probation.

D.      With regard to new hire employees, following the successful completion of their probationary period, and provided they have worked all shifts in the Patrol Bureau exclusive of shifts worked while assigned to the Field Training Program, the employee will be allowed to bid for shift and days off on a seniority basis.

E.      In order to provide scheduling protections to less senior employees, those without sufficient longevity to bid for an alternate shift assignment may request, via the Field Services Division Commander, a shift rotation for one (1) deployment quarter in a twelve (12) month period.   It shall be the sole responsibility of the junior employee wishing such a shift rotation to notify the Field Services Division Commander immediately upon posting of each shift bidding schedule.

F.      In the event that a less junior employee qualifies for a shift rotation and desires to exercise their prerogative to rotate to another shift, the employee with the least seniority in the bidding process who has bid on a shift will be "bumped" to an alternate shift in order to provide a shift opening for the junior employee.  The senior employee shall retain the right to select the deployment quarter in which they will be displaced in the rotation.  All other seniority rights shall remain in full force and effect.

## ARTICLE 30 – <u>EXTRA JOB SIGN-UPS</u>

A.  Regular officers of the Hermosa Beach Police Department will be given priority over reserve officers in the assignment of extra jobs. No restrictions on the number of regular officers who can sign up for extra jobs shall be imposed. Officers and Sergeants will be compensated for all hours worked on an overtime basis for extra job sign-ups at time and one-half.

B.  To be eligible for an extra job, an officer must have completed their probationary period. The officer must have signed up for the job at least five (5) days prior to the date listed on the job posting. If no regular officer has signed up for the job five (5) days prior to the listed date, the job may be assigned to a reserve officer. Available extra jobs will be posted on the bulletin board at least ten (10) days in advance of the job date.

C.  In the matter of foot patrol and beach patrol jobs, a monthly schedule will be posted, when possible, at least five (5) days prior to the first day of the month. A sign-up list for foot patrol and beach patrol extra jobs will be posted at least ten (10) days prior to the date of the job for the following month. Failure to work a job assignment after having been selected to do so will be deemed to be a violation of general orders. For emergency reasons, an officer may provide a replacement for the extra job from one of the other regular officers to cover the assigned job. For the same reasons, and with the permission of the Division Commander, a reserve officer may be used as a replacement in an emergency situation.

D.  Nothing herein shall prohibit the City from hiring temporary civilian employees to perform police related duties in the enforcement of Municipal Code provisions relating to bicycles and skateboards. Any additional assignments of temporary civilian employees shall be subject to the meet and confer process.

## ARTICLE 31 – <u>SHIFT COVERAGE</u>

If for any reason the Police Department cannot meet a minimum three-person staffing standard requirement (consisting of Watch Commander and two area cars), the Department shall have the right to fill positions with Certified Level I Reserve Officers. This may be done only when all regular officers have been contacted to determine their availability to cover the shift or a portion of the shift, which will be understaffed.

## ARTICLE 32 – <u>WATCH COMMANDER SELECTION</u>

The Chief of Police shall have the right to establish criteria for selection of officers to be placed on the Watch Commander's list. The Chief shall select any number to be placed on the list and may remove officers or add officers to the list at any time.

Police Officers & Sergeants

## ARTICLE 33 – <u>PERFORMANCE REVIEW</u>

Upon completion of probation, each employee shall be reviewed annually; said review to be objective, constructive in nature designed to point out area of strengths, weakness and methods for improvement.   The review will be completed by the employee's immediate supervisor and will include all co-lateral assignments (i.e. FTO, Rangemaster, Dare Officer, etc.).  Contents of the form will be submitted to the Police Officers Association for review and comments.

## ARTICLE 34 – <u>DISCIPLINARY ACTIONS</u>

A.    For the purpose of defining disciplinary actions, the following definitions shall be applicable:

1.    Disciplinary actions are defined as:

   a.    Dismissal
   b.    Demotion
   c.    Suspension
   d.    Reductions in pay
   e.    Reprimand (written)

2.    Reductions in pay are governed by the "Blue Section" of the Police Manual.

3.    Appeals from the disciplinary actions shall only be subject to the "Blue" section of the Police Manual entitled "Rules and Regulations."

4.    Prior to the commencement of any internal investigation that is likely to subject the officer to disciplinary action, the officer shall be advised of their rights pursuant to Section 3300, et. seq., of the California Government Code as amended.  All rights contained therein shall be applicable to the disciplinary actions and shall be used as a minimum guideline only.

5.    Any reprimand record or other writing containing negative comments (with the exception of Performance Evaluations) included in the employees personnel package is a written reprimand.

6.    Inclusionary periods as currently set forth in the Police Department Rules and Regulations shall remain in effect during this MOU

7.    Any officer receiving time off dispensed as a result of disciplinary action can use either accumulated compensatory time or vacation time at their discretion.  However, when exceptional circumstances arise and the City feels that it is in the best interest to keep an officer off duty for a limited period of time (not to exceed five (5) working days), the City may exercise this right.

Police Officers & Sergeants

8. For purposes of this section, a "suspension day" imposed as a result of disciplinary action or "workday" referred to in Section 7 is equivalent to eight (8) hours.

## ARTICLE 35 – <u>LAYOFF</u>

A. Hermosa Beach Municipal Code Section 2.76.200 , as currently enacted, is the governing provision regarding layoff.  However, City further agrees that, prior to implementation of any such layoff, discussions shall be held to explore other alternatives, mitigation, etc.

B. It is further agreed that in the event the City should contract with another agency for provision of police services, the Association shall receive six (6) months advance written notice prior to the effective date of any such change.

## ARTICLE 36 – <u>NO SMOKING</u>

The parties agree that the City shall amend its class specifications for unit positions to provide that employees who become unit employees after the date this MOU goes into effect shall, as a condition of their continued employment, refrain from smoking tobacco or any other non-tobacco substance at any time on duty.  Violation of this condition of employment shall be deemed good cause for dismissal.

## ARTICLE 37 – <u>ASSOCIATION DIRECTORS TIME</u>

A maximum of two Board members shall be allowed to attend out of town meetings on City time up to and including a cumulative total of five (5) working days per calendar year provided such out of town meetings are for purposes of Association business. With the permission of the Police Chief additional days may be granted.

## ARTICLE 38 – <u>DURATION OF CONTRACT</u>

This MOU is effective July 1, 2009 and shall remain in full force and effect through June 30, 2010.

In witness whereof, the parties hereto have caused their duly authorized representatives to execute this Memorandum of Understanding this_____day  of_____, 2009.


HERMOSA BEACH POLICE
OFFICERS' ASSOCIATION                    CITY OF HERMOSA BEACH


_____            _____
Jaime Ramirez                            Stephen R. Burrell, City Manager


_____            _____
Kevin Averill                            Viki Copeland, Finance Director


_____
Brian Smyth


_____
Mick Gaglia

Police Officers & Sergeants

Exhibit A

## GRIEVANCE PROCEDURES
## FOR
## HERMOSA BEACH POLICE DEPARTMENT

I.  Purpose of Grievance Procedures

    a.    To promote improved employee-employer relations by establishing grievance procedures on matters.

    b.    To provide that grievances shall be heard and settled as informally as possible.

    c.    To enable grievances to be settled promptly and/or as near to the point of origin as possible.

II.  Definition

A grievance is defined as any dispute concerning the interpretation, intent or application of the written Memorandum of Understanding or departmental rules and regulations governing personnel practices or working conditions applicable to employees covered by the Memorandum of Understanding.  An impasse in meeting and conferring upon the terms of a proposed Memorandum of Understanding is not a grievance.

III.  Conduct of Grievance Procedure

    a.    An employee may request the assistance of another person of his own choosing in preparing and presenting of his grievance at any level of review, or may be represented by a recognized employee organization, or may represent himself.

    b.    The employee and his representative, if any, may use a reasonable amount of work time, as determined by the appropriate Division Commander, and a Police Association Board Representative, in conferring about and presenting a grievance.

    c.    Any grievance relating to the retroactive status of monetary or fiscal matters shall be limited to the date of filing of the grievance in writing, except in such cases where it would be impossible for the employee to have prior knowledge of an accounting error, or where the error is departmentally or City caused.

    d.    The time limits specified may be extended to a definite date by mutual agreement of the employee and the reviewer concerned.

    e.    Employees shall be free from reprisal for using the grievance procedure.

IV.   <u>Matters Subject to Grievance Procedure</u>

Full-time employees having probationary or permanent status may process a personal grievance on one, or more than one, of the following grounds.

a.   Improper application of rules, regulations and procedures.

b.   Unfair treatment, including coercion, restraint, or reprisal.

c.   Reduction in force action – layoffs.

d.   Promotion procedures implemented unfairly.

e.   Classification of position.

f.   Non-selection for training opportunities.

g.   Discrimination because of race, religion, color, creed, or national origin.

h.   Any matter affecting an employee's work schedule, fringe benefits, holidays, vacation, sick leave, retirement, performance, rating, a change in classification, salary, work assignment, or any other matter affecting wages, hours or working conditions.

i.   Discharge, demotion, or suspension.

j.   Individual disputes over the intents or application of the provisions of the most recent officially signed agreement between the City and their recognized employee representatives.

Probationary employees may file grievances under all of the above, but not as applied to their performance rating or dismissal.

V.      Grievance Procedure

Step One – Informal Process

An employee must attempt first to resolve a grievance through discussion with his immediate supervisor without undue delay on an informal basis. If, after such discussion, the employee does not believe the problem has been satisfactorily resolved, he shall have the right and obligation to discuss it with his supervisor's immediate superior, if any, and his department head if necessary. Every effort shall be made to find an acceptable solution by these informal means at the most immediate level of supervision. At no time may the informal process go beyond the department head concerned. In order that this informal procedure may be responsive, all parties involved shall expedite this process. In no case may more than fifteen (15) calendar days elapse from the date of the alleged incident or action and the resolutions of the grievance or completion of the informal process. Said grievance shall be considered waived if not so presented to the immediate supervisor within fifteen (15) calendar days following the day during which the event upon which the grievance is based occurred.

Step Two – Formal Process – Management Supervisor

If the grievance is not resolved through the informal process, the employee shall have the right within ten (10) working days from the decision or completion of the informal process to file the grievance in writing on a specified form and present it to his Division Commander. The Division Commander shall discuss the grievance with the employee and shall render a decision and comments in writing and return them to the employee within ten (10) working days after receiving the grievance. Failure of the grievant to serve such written notice ten (10) calendar days following the termination of the informal step shall constitute a waiver of the grievance.

Step Three – Formal Process – Department Head

If the grievance procedure is not resolved at Step 2 and the employee is notified in writing, the employee may, within the next five (5) working days present the grievance in writing to the department head. In the event that no written response is given to the employee within ten (10) working days from the date of submission of the written grievance, the grievance will be assumed to have been valid and the employer will take steps to correct that problem. Failure of the employee to take appropriate action within the prescribed time periods will be deemed to constitute termination of the grievance. Failure of the employer to respond within the time provided will be deemed to be an admission as to the validity of the grievance and will require affirmative action to correct the grievance. The department head shall render his decision and comments in writing within five (5) working days from the date of receipt of the grievance and return them to the employee within that time.

Step Four – Advisory Arbitration

a.  If the grievance is not resolved in Step 3 the employee may within five (5) working days, present the grievance in writing to the City Manager or his designate for processing.  Failure of the employee to take this action within five (5) working days from the date of receipt of rejection of the grievance in Step 3 will be deemed to constitute a termination of the grievance.

b.  The scope of the advisory arbitration of grievance shall include all of the grievable matters as set forth in Section 4 of this procedure.  An exception would be those matters that by Peoples Ordinance NS 211 must be adjudicated by the Hermosa Beach Civil Service Commission.  All other grievances shall bypass Step 4 of the grievance procedure and go to the Step 5 procedures.  An employee who chooses advisory arbitration shall be deemed to have made a choice between the Civil Service Board of Review and arbitration and, therefore, may not seek two hearings on the same grievance.

c.  As soon as possible, and in any event not later than ten (10) work days after either party received written notice from the other of the desire to arbitrate, the parties shall agree upon an arbitrator unless external constraints prohibit compliance, whereupon the earliest date available shall apply.

d.  Arbitrator shall be selected from a list of seven (7) arbitrators from within two (2) working days.  If a mutual agreement cannot be reached at a meeting of the two parties as to selection of an arbitrator, then each party shall strike off a name from the list on an alternating basis until one name remains which person shall become the arbitrator.  The City shall have the first opportunity to strike a name from the list of (7) arbitrators.  The priority of striking names shall alternate from one party to the other each time advisory arbitration is invoked by the same parties.

e.  Any arbitrator appointed must be familiar with employee/management relations in public employment.

f.  The arbitrator shall hold such hearings and conduct such proceedings as may be necessary, but such hearings and proceedings shall be conducted in an expeditious and confidential manner with the involved parties only.  Employees called as witnesses shall be released from duty as needed.

g.  The rules of conduct of proceedings shall be according to those procedures utilized by the Arbitration Service.

h.  The findings of fact and the recommendations of the arbitrator shall be transmitted to the involved parties and the City Administrator.

i.  The fees and expenses, including the making of the record of the arbitrator, shall be borne equally by the parties.  Calling of the witnesses by either party shall be done with a reasonable amount of restraint.  An excessive use of witnesses will necessitate the cost of loss of work time to be paid by the party calling the witnesses. A decision of the arbitrator may be requested by either party as to whether there may have been an excessive use of witnesses.

j.  The arbitrator shall have no power or alter, amend, change, add to, or subtract from any of the terms of the Memorandum of Understanding.  The decision of the arbitrator shall be based solely upon the evidence and arguments presented to him by the respective parties in the presence of each other.

k.  The decision of the arbitrator shall be final upon the parties to the dispute unless either party, within 60 days after the final written decision of the arbitrator is personally served upon the party, causes to be filed in a court of competent

jurisdiction a complaint to review all or any part of the proceeding, upon litigation, the entire matter shall be reviewed and a trial de novo held.

### Step Five – Final Process – City Manager

If the grievance cannot be resolved at Step 3, the employee may thereafter submit the matter to the City Manager or his properly appointed representative for the purposes of obtaining his review and settlement of the grievance.  Thereafter the City Manager or his designated representative shall, in all non-arbitrable cases, review the matter and render a decision in writing to the parties within fifteen (15) calendar days from the date of receipt.

Exhibit A                                                                    Police Officers & Sergeants